(No. 96-CC-3412–<span></span>

MARILYN SCHWARTZ, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 26, 1997.*

LEVIN & BREND (JEFFREY W. BREND, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (MICHAEL F. ROCKS, Assistant Attorney General, of counsel), for Respondent.

## OPINION

Epstein, J.

This is a former wife's claim for half of an Illinois income tax refund jointly claimed by and jointly payable to her and her former husband that was erroneously paid to him. The State says she should sue him for the money, rather than have the State pay twice. She replies that she tried, but he is broke. The State says that is not good enough. This Court says it is, and that the State should pay her and recover the excess from him when and if it can. For the reasons that follow, we will award the requested 47% of the refund amount to the Claimant.

### The Facts

Marilyn Schwartz, f/k/a Marilyn Goldboss (when she was married to Lee Goldboss) brings this $5,455.52 claim for her half (actually 47%) of a State income tax refund for tax years 1986, 1987, and 1988 that the Department of Revenue (IDR) approved but then erroneously paid to Lee Goldboss, who by then was the Claimant's ex-husband, instead of jointly to him and her. The IDR has acknowledged its refund error. The facts are substantially undisputed.

Marilyn and Lee, both then Illinois residents and married to each other, filed joint state income tax returns for years 1986-88 and paid their taxes for those years from joint (marital) property. In 1989, still filing jointly, Marilyn and Lee reported a net operating loss, which allowed them to file amended returns for 1986-88 claiming refunds totalling $11,607.50. This they did, also jointly, after their divorce.

The couple divorced in June, 1990. Under their 1990 divorce judgment, which incorporated a marital settlement agreement, Marilyn received 47% of the marital

assets and was (undisputedly) therefore entitled to 47% of any joint tax refund. After the divorce, but before the State issued the refund, Lee asked the IDR to send the refunds to him instead of to the accountant designated on the amended returns; the IDR not only directed the three refund warrants to Lee, but also "dropped off" Marilyn's name, so that the warrants ultimately issued and sent by the Comptroller were made out to Lee alone as well as mailed to him. Of course, he cashed them.

In 1995, in response to inquiries from Claimant, the IDR acknowledged its error when it "dropped off" Claimant's name, and admitted that "the refunds should have gone out in both names." (Tr. Ex. No. 8.) The IDR nevertheless refused to pay Claimant her share of the refunds.

Claimant filed suit. Proceeding within the divorce case in the Circuit Court, Claimant filed a complaint against her former husband, the IDR, the Attorney General, her accountants, and two banks. She necessarily dismissed the IDR from that action, as it could not and would not consent to suit in that forum, and proceeded against Lee Goldboss, her former husband, who was required to and did file an asset disclosure statement pursuant to local rule 13.3(b) of the Circuit Court of Cook County. In that disclosure, Mr. Goldboss reported under oath that he then had no income or assets. (Tr. Ex. No. 11.) Claimant then filed her refund claim in this Court.

## The Issues

As argued in this Court, there are only two issues, which may well be termed non-issues as neither is terribly substantial in light of the arguments advanced:

First is whether the Claimant was and is entitled to 47% of the refund amount.

Second is whether the Claimant has adequately exhausted her prospective alternate sources of recovery under the "exhaustion" requirements of section 25 of the Court of Claims Act (705 ILCS 505/25) and section 790.90 of the Court of Claims Regulations. (74 Ill. Admin. Code 790.90.) The exhaustion issue boils down to whether or not the Claimant adequately exhausted her potential recovery of her share of the refunds from her ex-husband Lee Goldboss.

## Opinion

There is no significant question of Claimant's entitlement to 47% of the total refund; this is not substantially disputed by the Respondent. There is no dispute that the original tax liabilities, tax returns, and tax payments were all jointly made and were all joint responsibilities of Marilyn and Lee when and as married. There is no dispute that the funds involved were marital property when paid as taxes to the State, and there is no genuine issue about the legal character of the refunds as repayments of marital property. Finally, the Respondent does not dispute that the divorce judgment entitles Claimant to 47% of all marital property.

The exhaustion issue is a trifle more substantial. Under the facts at hand, the issue becomes whether or not this Court's exhaustion of alternate recovery sources requirement mandates that a claimant pursue a judgment-proof defendant beyond the point when there is a reasonable (or as here, undisputed) determination of the fact of such defendant's inability to pay a judgment on the asserted liability if one were obtained. Claimant relies on the "rule of reason" construction of our exhaustion requirement, citing the settlement precedents in *Dellorto v. State* (1979), 32 Ill. Ct. Cl. 435, and *J.F. Inc. v. State* (1988), 41 Ill. Ct. Cl. 5, which held that reasonable settlements with

alternative-source defendants suffice to satisfy our exhaustion requirements, in lieu of full pursuit of all alternate sources to judgment and collection. This Court has not insisted on autonomic exhaustion beyond reason, when reason is shown. A judgment-proof defendant can be one such reason to forego further litigation which thus appears futile, although this Court is always skeptical of that justification.

In this case, two factors inform our decision. First, pursuit by Marilyn of her former husband, Lee, was attempted in good faith (and with extraordinary motive as well as incentive) and was only terminated when he had affirmatively and under oath showed himself to be judgment-proof in a judicial proceeding. Second, in the unusual circumstances of this case, where the Respondent itself put the sought-after funds into the hands of the putative alternative source—and thus generated the need for the Claimant to seek recovery from that source—this Court is not inclined to a rigid application of our exhaustion rule. Here, Marilyn Schwartz did enough. We will not withhold her wrongfully unpaid refund and force her to pursue her impoverished ex-husband. It is far more appropriate, significantly more efficient and considerably more just for the IDR now to cure its error by paying the Claimant her legitimate tax refund, and by assuming the responsibility of collecting the excess refund from Mr. Goldboss when and if he subsequently has income or assets.

### Order

Claimant Marilyn Schwartz is awarded the sum of $5,455.52 as her 47% share of her and Lee Goldboss' joint Illinois income tax refund for tax years 1986, 1987 and 1988, in full satisfaction of this claim. Judgment of $5,455.52 is entered for Claimant against the Respondent.